IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Lewis T. Babcock

Civil Action No. 14-cv-02077-LTB

**MICHAEL SALVATORE PARRINO**,

> Applicant,

v.

**LOU ARCHULETA**, and
**THE ATTORNEY GENERAL OF THE STATE OF COLORADO**,

> Respondents.

---

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) ("the Application") filed *pro se* by Applicant Michael Salvatore Parrino.  Respondents have filed an Answer to Application for Writ of Habeas Corpus (ECF No. 22) ("the Answer") and Mr. Parrino has filed Applicant's Reply to Respondents' Answer to Application for Writ of Habeas Corpus (ECF No. 23) ("the Traverse").  After reviewing the record, including the Application, the Answer, the Traverse, and the state court record, the Court **FINDS** and **CONCLUDES** that the Application should be denied and the case dismissed with prejudice.  An appropriate order follows.

### I. BACKGROUND

Mr. Parrino is challenging the validity of his conviction and sentence in Larimer County District Court case number 00CR996.  The factual background of Mr. Parino's crimes and convictions was summarized by the Colorado Court of Appeals as follows.

A man wearing a hood over his head and brandishing a silver

.45 caliber handgun robbed a 7-Eleven store.  As the robber exited the store, he was confronted by two police officers, with whom he exchanged gunfire before he fled down a dark alley.

A police SWAT team conducted a door-to-door search of the area.  The police came upon defendant lying underneath a blanket in a nearby apartment.  Inasmuch as they mistakenly believed the robber was of a different race, however, they did not detain defendant.  Subsequently, upon learning that the robber was a member of defendant's race, the police returned to the apartment. Although defendant was no longer there, the police found some clothing matching that worn by the robber, as well as a loaded .45 caliber handgun and the duffel bag in which the robber had placed the stolen money.  Defendant's fingerprints were on the' gun and on an ammunition magazine found in the duffel bag.

Defendant lived with his brother.  A police search of their residence uncovered numerous stolen guns, including an AK-47 assault rifle similar to one seen in the duffel bag prior to the robbery. The guns were found in the brother's bedroom.  Police also found a "money plan," written primarily by the brother and containing the details of an armed robbery he planned to commit.  The brother denied that the money plan concerned the 7-Eleven robbery or that he was in any way involved in it.  The brother admitted to possessing the stolen guns and agreed to testify against defendant in return for a deferred judgment and sentence on a class 4 felony charge of theft by receiving in relation to the guns.

At trial, the brother testified how, after picking defendant up in a car in the vicinity of the robbery in the midst of the police search, defendant had told him in detail about the robbery.  Although defendant's theory of defense was that the brother committed the robbery, the jury found defendant guilty as charged.

As charged, aggravated robbery was a per se crime of violence.  On special interrogatories, the jury also made a finding requiring crime of violence sentencing on the assault counts. Consequently, the trial court sentenced defendant to four consecutive twenty-two-year terms of imprisonment on the robbery and assault counts, pursuant to § 18-1.3-406, C.R.S. 2003 (formerly § 16-11-309). The court sentenced him to two terms of three years imprisonment on the menacing and trespassing counts, to run concurrently with the consecutive terms.

*People v. Parrino*, No. 02CA1676, slip op. at 1-3 (Colo. App. Sept. 16, 2004) (ECF No. 8-13

at 3-5) (Parrino I).  On March 7, 2005, the Colorado Supreme Court denied Mr. Parrino's petition for writ of certiorari on direct appeal.

On June 6, 2005, Mr. Parrino filed in the trial court a postconviction motion pursuant to Colorado Crim. P. Rule 35(c) asserting ineffective assistance of counsel.  On June 16, 2005, the trial court summarily denied the Rule 35(c) motion (ECF No. 8-10 at 2).   On February 1, 2007, the Colorado Court of Appeals (CCA) affirmed in part, reversed in part, and remanded with directions (*See* ECF No. 8-8) (Parrino II).  The CCA concluded that a remand was warranted for the trial court to hold an evidentiary hearing on whether Mr. Parrino's trial counsel was ineffective and to make findings of fact and conclusions of law (*Id.* at 4).

Mr. Parrino was appointed alternate defense counsel to represent him during the remand proceedings (ECF No. 8-8 at 8-9; ECF No. 8-4 at 4).   Following an evidentiary hearing, the trial court issued a written order denying Mr. Parrino's motion for postconviction relief, finding that Mr. Parrino's ineffective assistance of counsel claim lacked merit (ECF No. 8-7).  Mr. Parrino appealed and the CCA affirmed the trial court's denial of his Rule 35(c) motion on January 3, 2013 (ECF No. 8-4 (Parrino III).  On August 5, 2013, the Colorado Supreme Court denied Mr. Parrino's petition for writ of certiorari in the state court postconviction proceedings (ECF No. 8-2 at 2).

On July 25, 2014, Mr. Parrino filed his federal habeas corpus Application asserting three claims for relief.  In claim one, Mr. Parrino contends that he received ineffective assistance of trial counsel based upon a financial conflict of interest (ECF No. 1 at 5, 9-11). In claim two, he asserts that he received ineffective assistance of postconviction counsel because counsel "deliberately sabotag[ed] my State Evidentiary Hearing" (*Id.* at 12-17).

He explains that claim two is not an "official claim" but rather an "exception for a federal evidentiary hearing" in this Court (*Id.*).  In claim two, Mr. Parrino also contends that the prosecution engaged in misconduct during the remand proceedings (*Id.*).  In claim three, Mr. Parrino alleges he is innocent of one of the counts for assault on a peace officer because his conviction for two counts of assault on one peace officer was "duplicitous" (*Id.* at 18).  The Court previously entered an Order to Dismiss in Part (ECF No. 21) dismissing claim 3 as unexhausted and procedurally barred.

## II.  STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Mr. Mendoza liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Parrino bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (*per curiam*).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 99. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims." *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Parrino seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme]

Court's decisions as of the time of the relevant state-court decision."   *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.   Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).   If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).   *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.   *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).   "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.   *Id.* at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.   *See Williams*, 529 U.S. at 409-10.   "[A] federal habeas court may not issue the writ

simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in

> justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

This deference was explained in *Renico v. Lett*, 599 U.S. 766 (2010) where the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial.  The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion.  The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us.  That question is not whether the trial judge should have declared a mistrial.  It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

*Lett*, 559 U.S. at 772-73.  The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision-or, for that matter, the trial judge's declaration of a mistrial-was right or wrong.  The latter question, in particular, is a close one.  As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial.  The Michigan Supreme Court declined to accept this confession of error, and in any event-for the reasons we have explained—**whether the trial judge was right or wrong is not the pertinent question under AEDPA**.

*Id.* at 778, n. 3 (emphasis added) (internal citation omitted).  *See also chriro v. Landrigan*,

8

550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.' ").

Moreover, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court makes this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

In making this determination, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not

9

made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly.  *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982).  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

For federal habeas claims not adjudicated on the merits in state-court proceedings, the Court must exercise its independent judgment.  *McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001).  Any state-court findings of fact that bear upon the claim are entitled to a presumption of correctness rebuttable only by clear and convincing evidence.  *Hooks v. Ward*, 184 F.3d 1206, 1223 (10th Cir. 1999) (applying § 2254(e)(1)'s presumption of correctness to state-court factual findings bearing upon the claim, even though the claim was not adjudicated on the merits by the state court).

## III.  MERITS OF APPLICANT'S REMAINING CLAIM

### A.  Ineffective Assistance of Counsel

As noted above, Mr. Parrino contends that trial counsel provided ineffective assistance of counsel by preventing Mr. Parrino from accepting a 25-year plea agreement because counsel wanted to earn more money by litigating the case at trial.  The Sixth Amendment guarantees an accused the right to effective assistance of counsel in all criminal proceedings.  The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: 1) counsel's performance

was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of the *Strickland* test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 688. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair and unreliable. *Id.* at 689. A defendant is not entitled to relief unless he makes both showings. *Id.* at 687. Moreover, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id.* at 694. The *Strickland* standard applies equally to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2002). Colorado applies the same test for ineffective assistance of counsel as the *Strickland* test used in federal courts. *See Davis v. People*, 871 P.2d 769, 772–79 (Colo. 1994).

With regard to the first criterion, counsel's effectiveness is measured objectively considering all the circumstances. *Strickland*, 466 U.S. at 687-88. In evaluating counsel's performance, the Court must "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. *Id.* at 689. Thus, counsel's strategic choices will not be second guessed by *post hoc* determinations that a different trial strategy would have fared better. The relevant inquiry is not whether counsel was prudent, appropriate, or perfect; rather, the focus is simply to ensure that the defendant received a fundamentally fair trial. *Id.*

With respect to the second criterion, to establish prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Prejudice must be evaluated in light of the totality of the evidence presented at trial and a verdict only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.

In analyzing Applicant's claim under the two-part test announced in *Strickland*, this Court must apply the standards set forth in section 2254(e) concerning the presumption of correctness applicable to state court factual findings.  The question of effectiveness of counsel under *Strickland* is a mixed question of law and fact; it requires the application of a legal standard to the historical, fact determinations.  In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies.  Likewise, a state court's determination that a decision was a tactical one is a question of fact.

The Supreme Court recently reiterated the difficulty of prevailing on an ineffectiveness claim on habeas review.

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law."  A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 100 (2011) (internal quotations and citations omitted).

Surmounting *Strickland*'s high bar is never an easy task.   An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the adversary process the right to counsel is meant to serve.   Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.   Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.   It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.   The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.   The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.   Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).   **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.**

*Richter*, 562 U.S. 105 (emphasis added) (internal quotations and citations omitted).  *Accord*

*Hooks v. Workman*, 689 F.3d 1148, 1187 (10th Cir. 2012).

The Sixth Amendment right to counsel extends to the plea-bargaining process.

*Padilla v . Kentucky*, 559 U.S. 356, 374 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

In this regard, defense counsel has the duty to communicate formal offers from the

prosecution to accept a plea on terms and conditions that may be favorable to the accused.

*Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012).  When defense counsel allows an offer to

expire without advising the defendant or allowing him to consider it, defense counsel's

performance falls below an objective level of reasonableness.  To show prejudice from

13

ineffective assistance of counsel where a plea offer has lapsed or been rejected because

of counsel's deficient performance, a defendant must demonstrate a reasonable probability

that he would have accepted the earlier plea offer had he been afforded effective

assistance of counsel. *Id.* At 1409 (*Strickland's* inquiry into whether "the result of the

proceeding would have been different," requires looking not at whether the defendant would

have proceeded to trial absent ineffective assistance but whether he would have accepted

the offer to plead pursuant to the terms earlier proposed) (citation omitted). Finally, a

defendant must also demonstrate a reasonable probability the plea would have been

entered without the prosecution canceling it or the trial court refusing to accept it. *Id.* ("This

further showing is of particular importance because a defendant has no right to be offered

a plea nor a federal right that the judge accept it.") (citations omitted).

　　In its review of Applicant's claim, the CCA held as follows.

## B. *Strickland* Test

　　A trial court should apply the Strickland test when addressing contentions of ineffective assistance of counsel arising from alleged conflicts of interest other than those which arise from representing co-defendants. *Mickens v. Taylor*, 535 U.S. 162, 174-76 (2002).

　　To establish a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was outside the wide range of professionally competent assistance; and (2) the defendant was prejudiced by counsel's errors.

## 1. Causation

　　The causation prong of the *Strickland* test, as limited by the remand order, required defendant to show that Mr. Gavaldon's performance fell outside the range of professionally competent assistance because of the financial conflict of interest, specifically that he put his financial interest before defendant's desire to enter a favorable plea.

　　The remand court concluded that defendant's allegation lacked factual

support.  The court based its conclusion on findings that:  (1) the plea bargain offer of twenty-five years expired before Mr. Gavaldon represented defendant and no offer of twenty-five years was available during Mr. Gavaldon's representation; (2) defendant's family, not Mr. Gavaldon, pressured him to go to trial; (3) the best offer available during Mr. Gavaldon's representation was for sixty-four years; (4) Mr. Gavaldon communicated all plea offers to defendant; (5) defendant rejected all offers; (6) defendant's mother and her then boyfriend agreed to pay Mr. Galvadon $30,000 to reach a disposition, additional $10,000 to prepare the case for trial if a disposition could not be reached, and another additional $10,000 to try the case; (7) Mr. Galvadon billed $41,934.45 on the matter; and (8) defendant's mother and her boyfriend did not pay the full amount billed.  These findings are well supported in the record by the testimony of Messrs. Taylor, Galvadon, and Parrino and defendant, and exhibits admitted at the hearing.

Based upon the court's findings, it properly concluded that defendant failed to satisfy his burden of proving that counsel's performance was deficient.

## 2. Prejudice

The prejudice prong of the *Strickland* test requires a defendant to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.

The remand court concluded that even if defendant's counsel's representation were deficient, defendant was not prejudiced.  The court found that defendant failed to show that the prosecution offered, or would have offered, defendant a twenty-five-year plea while Mr. Gavaldon represented him.  The court based its findings on Mr. Taylor's testimony that a twenty-five-year offer was not available during Mr. Gavaldon's representation of defendant because:  (1) after the initial offer expired, the prosecution learned that defendant participated in two burglaries after committing the crimes for which he was charged in the underlying case; and (2) the police officers defendant shot at expressed dissatisfaction with a twenty-five-year plea.

Defendant asserts that the court erred in so finding because a stipulation entered by the parties conclusively established that a twenty-five-year offer was available.

The stipulation defendant refers to was entered between defendant's remand counsel and the district attorney's office in order to address defendant's motion to disqualify the district attorney from the remand

proceedings because he was a potential witness.  One line of the stipulation states, "Mr. Murray [one of the attorneys who prosecuted defendant's underlying case] reiterates that it is his recollection that Mr. Gavaldon was made an offer that was at least similar to the one made to [the public defender who represented defendant prior to Mr. Galvadon]." The stipulation also stated, "Mr. Murray's memory is hampered by the passage of almost eight years."

However, Mr. Taylor, the other prosecutor, testified at the remand hearing that he had recently reviewed the file and that a twenty-five-year offer was not available during Mr. Gavaldon's representation.

. . .

The trial court that presides over a Crim. P. 35(c) hearing is the trier of fact and bears the responsibility of determining the weight and credibility to be given to witness testimony.  Where the evidence in the record supports the findings and holding of the court, the judgment of the court will not be disturbed on review.   Based on the record, including the vague and self-limiting language of the stipulation in contrast to Mr. Taylor's testimony, we cannot conclude the court's findings are clearly erroneous or unsupported by the record.  Thus, we discern no error in the court's finding that a twenty-five-year plea offer was not available during Mr. Gavaldon's representation.

Even if we were persuaded by defendant's argument, it would not change the result because the court also found that defendant failed to prove that he would have accepted a twenty-five-year offer.  The court's finding was based on record evidence that defendant had previously rejected a twenty-five-year plea against the advice of counsel, and on defendant's brother's testimony that he promised defendant that he would "take the fall" at trial.  Based on this record, the court properly concluded that defendant failed to satisfy the prejudice prong of the Strickland test.

Thus, we conclude that the court properly denied defendant's petition for postconviction relief.

ECF No. 8-4, pp. 7-13 (internal citations and testimony omitted).

On federal habeas review, this Court must presume that the factual findings made by the state courts are correct unless Applicant has rebutted "the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1).  To this end,

Petitioner has failed to rebut these findings.  Moreover, Applicant has not met his burden of showing that the state court's decisions are clearly contrary to federal law as determined by the Supreme Court of the United States.  Nor has he shown that the state court's decisions are an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  In order for him to succeed on his claims it is not enough to convince a federal court that in its independent judgment the state court applied the law incorrectly, it must have applied the law in an "objectively unreasonable manner."  *Bell v. Cone*, 535 U.S. 685, 698–699 (2002).  Applicant has not made such a showing and, therefore, is not entitled to habeas relief with respect to his first claim.

## B. Claim 2

Applicant also seeks to assert a claim of ineffective assistance of his postconviction counsel.  While AEDPA prohibits this court from granting substantive relief on this claim, *see* 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."), Mr. Parrino appears to be seeking an evidentiary hearing based on the conduct of both postconviction counsel and the prosecution during postconviction remand proceedings.

AEDPA severely restricts the authority of federal courts to grant evidentiary hearings in habeas cases.  The Supreme Court's decision in *Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388 (2011) directly controls the precise question before this Court.  In that case, Pinholster was convicted in California state court of first-degree murder and sentenced to death. He sought post-conviction relief, claiming his counsel was ineffective at the penalty phase by failing to investigate or present mitigating evidence, including evidence that

17

Pinholster suffered from mental disorders.  The psychiatrist Pinholster's counsel consulted before trial, Dr. Stalberg, who concluded that Pinholster did not suffer from a mental disorder, was not called to testify at Pinholster's trial.  On collateral state court review, Pinholster supported his ineffective assistance claim with academic, medical, and legal records, as well as declarations from family members, one of his trial attorneys, and a psychiatrist, all of which suggested Pinholster suffered from bipolar mood and seizure disorders.  Pinholster's petition was denied.

Pinholster filed a federal habeas petition in which he reiterated his ineffective assistance claim and added new allegations that his counsel failed to provide Dr. Stalberg with enough information to make an accurate report.  In support of Pinholster's new allegations, Dr. Stalberg declared that had he known of evidence gathered after trial, he would have conducted "further inquiry" before concluding that Pinholster did not suffer from a mental disorder.  The federal district court granted Pinholster an evidentiary hearing. Both Pinholster and the state offered new evidence at the federal evidentiary hearing.  The district court granted Pinholster habeas relief after considering evidence from the evidentiary hearing and concluding that the California Supreme Court had unreasonably applied *Strickland*.

The United States Supreme Court reversed, holding that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petition[er] must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 131 S.Ct. at 1400 (footnote omitted).  The Court reasoned that the purpose of 28 U.S.C. § 2254 is "to channel prisoners' claims first to the state courts" and that "[i]t would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new

18

evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*."  *Id.* at 1398–99.

Thus, an offender who believes he is entitled to habeas relief must first present a claim (including his evidence) to the state courts.  If the state courts reject the claim, then a federal habeas court may review that rejection on the basis of the materials considered by the state court.  If the federal habeas court finds that the state-court decision fails 2254(d)'s test (or if 2254(d) does not apply), then an evidentiary hearing may be granted.  If, however, the Applicant presented his claim to the state courts and the Court determines that he is not entitled to relief under 2254(d), there is no basis for a District Court to grant an evidentiary hearing.

In light of *Pinholster*, district courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d).  Otherwise, federal habeas petitioners would be able to circumvent the finality of state court judgments by establishing a new factual record.  This would contravene AEDPA, which requires petitioners to diligently present the facts in state court before proceeding to the federal courthouse.  As the Supreme Court reaffirmed:  "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state court proceedings."  *Pinholster*, 131 S.Ct. at 1401 (citing *Williams v. Taylor*, 529 U.S. 420, 437 (2000)).

As in *Pinholster*, here Mr. Parrino's state petition for postconviction relief was denied on the merits and he sought federal relief under 28 U.S.C. § 2254(d).  Like *Pinholster*, Parrino seeks to supplement the record with evidence he never presented to the state courts.  This is contrary to AEDPA, which requires this District Court to base its review only

19

on the evidence Parrino presented in state court.  Therefore, he is not entitled to an

evidentiary hearing to supplement the record regarding his ineffective assistance claim.

*Accord Calvert v. Dinwiddle*, 461 Fed. App'x 729 (10th Cir. 2012) (rejecting petitioner's

request for an evidentiary hearing to develop the record concerning trial counsel's alleged

ineffectiveness for failing to present a plea offer).

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254

filed by Applicant Michael Salvatore Parrino is **DENIED**;

2.  Applicant's Motion for a Free Copy of His State Court Record Pending Ruling on

his Motion for Limited Evidentiary Hearing is (ECF no. 20) is **DENIED**.

2. That this case is **DISMISSED WITH PREJUDICE**; and

3.  That there is no basis on which to issue a certificate of appealability pursuant to

28 U.S.C. § 2253(c).

DATED   April 6  , 2015.

BY THE COURT:

 s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court